STATE OF MISSOURI EX REL. ALBERT BOND LAMBERT, LOUIS NOLTE, JOHN J. NANGLE, JOHN H. GLASSCO, EDWARD R. HANDLIN, ANDREW T. AYLWARD, AND HARRY J. POWELL, AS THE BOARD OF TRUSTEES OF THE POLICE RETIREMENT SYSTEM OF THE CITY OF ST. LOUIS, MISSOURI, RELATORS, v. FRANK C. O'MALLEY, JUDGE OF THE CIRCUIT COURT OF THE CITY OF ST. LOUIS, MISSOURI, RESPONDENT.—121 S. W. (2d) 228.

St. Louis Court of Appeals.   Opinion filed November 8, 1938.

Relator's Motion for a Rehearing and Suggestions in Support Thereof Filed November 18, 1928.

Relator's Motion for Rehearing Overruled November 22, 1938.

*Alroy S. Phillips* for respondent.

*Edgar H. Wayman* and *Martin Barrow* for relators.

BENNICK, C.—This is an original proceeding in prohibition which presents the legal question of whether the Circuit Court of the City of St. Louis has the jurisdiction to entertain and adjudicate an action brought by a police officer against the Board of Trustees of the Police Retirement System of the City of St. Louis for the recovery of the accidental disability retirement allowance alleged to be due him under the provisions of the Police Retirement Pension System Act (secs. 8906-8918, R. S. Mo., 1929 [Mo. Stat. Ann., secs. 8906-8918, pp. 6258-6276]).

Prior to 1926 neither the State nor any municipality thereof possessed authority to make provision for the payment of police pensions from public funds, but in that year there was adopted an amendment to the constitution (Art. 4, sec. 48a) which provides that the General Assembly shall have the power to provide by law, or to authorize any municipality in this State to provide by ordinance, for the pensioning of members of any organized police force and the widows and minor children of deceased members thereof, and that nothing in the constitution contained shall prohibit, or be construed to prohibit, the exercise of such power or authority by the General Assembly.

Pursuant to the authority thus granted by such constitutional amendment, the General Assembly in 1929 enacted the act above cited, which, in cities of this State having a population of five hundred thousand or more, creates and establishes retirement or pension systems for the purpose of providing retirement allowances for policemen in such cities.

Roughly speaking, all policemen in any such city are automatically made members of the system, the general administration of which is vested in a board of trustees of seven persons, comprising the president of the board of police commissioners, the comptroller of the city, two members appointed by the mayor of the city, and three members elected by the members of the retirement system.

It is provided in the act that each trustee shall be entitled to one vote, with four votes necessary to a decision of the board, and that subject to the limitations of the act, the board of trustees shall, from time to time, establish rules and regulations for the administration of

the several funds created by the act and for the transaction of the board's business.

Elsewhere it is provided that the board of trustees shall be the trustees of the funds in question, and that it shall have full power to invest and reinvest such funds, subject to all the terms, conditions, limitations, and restrictions imposed by law upon life insurance companies in the State of Missouri in making and disposing of their investments.

With respect to retirement benefits or allowances the act provides (section 8911) a service retirement allowance, an ordinary disability retirement benefit, and an accidental disability retirement benefit. The method of computation of the particular benefit or allowance is in each instance specifically fixed by the act, with the amount of the same made dependent upon the member's accummulated contributions and his average final compensation.

The member's right to be retired with the service retirement allowance is in nowise contingent upon proof of disability, but not so with the two remaining benefits which are provided for. In either of such instances it is made the mandatory duty of the board of trustees to retire the member with a disability retirement allowance whenever it is certified by the medical board that the member is mentally or physically incapacitated for further performance of duty; that such incapacity is likely to be permanent; and that such member should be retired. If the disability has resulted from natural causes and not from accident within the meaning of the act, only the ordinary disability retirement benefit is payable, but if it is made to appear that the member "has become totally and permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place through no negligence on his part," then the member is entitled to be retired with the substantially greater accidental disability retirement allowance.

So far as the controversy leading up to this proceeding is concerned, it appears that one Casey, a member of the Police Retirement System of the City of St. Louis, became totally and permanently incapacitated for duty as the result of the loss of the sight of both eyes, and that the medical board so certified to the board of trustees.

It was Casey's contention that at a stated date, while he was at Twelfth Street and Clark Avenue in the City of St. Louis picking up and delivering police department messages in the actual performance of his duty as a policeman, an accident occurred through no negligence on his part, in that a storm arose and blew dust, sand, lime, and other foreign substances in his eyes, as the natural and proximate result of which he sustained the loss of vision.

Thereafter Casey made application to the board of trustees to be retired with an accidental disability retirement allowance of $119.22

a month for life computed upon the basis of his accummulated contributions and average final compensation. We gather that the issue before the board was that of whether his disability was accidental in its origin as he claimed, or whether, to the contrary, it was merely attributable to natural causes or disease so as to entitle him to be retired with only an ordinary disability retirement allowance. Evidence was taken by the board at a series of hearings which were held, and finally the board ordered him to be retired as of September 1, 1930, with an ordinary disability retirement allowance of $44.43 a month computed upon the basis of his accummulated contributions and average final compensation, which sum has since been paid him each and every month from and after the time of the taking effect of the retirement order.

Following the final denial of his application to be retired with an accidental disability retirement allowance, Casey instituted an action against the board of trustees in the Circuit Court of the City of St. Louis, in which action he seeks to recover the sum of $5,534.46, with interest, representing the gross total of the difference in monthly payments between ordinary and accidental disability retirement allowances for the period of seventy-four months elapsing between the date of his retirement by the board and the date of the institution of his action.

There after the members of the board demurred to the petition upon the ground that the same did not state facts sufficient to constitute a cause of action, and upon their demurrer being overruled by respondent, the judge presiding at the time in the assignment division of the circuit court, they instituted this proceeding in prohibition in this court to test out the jurisdiction of the circuit court to entertain and adjudicate the action pending before it. In other words, their position is not that the petition, as it now stands, is fatally defective or insufficient in some respect as to which it is capable of amendment, but rather that the case in which the petition is filed belongs to a class of cases as to which no cause of action could be stated over which the circuit court could have jurisdiction. If the case fell within the former category, the question would of course be merely one of error reviewable only by appeal or writ of error, but inasmuch as the court's jurisdiction over this character of case is brought in issue by the demurrer, an extraordinary proceeding in prohibition is available to relators. [State ex rel. v. Sevier, 339 Mo. 483, 98 S. W. (2d) 677; State ex rel. v. Harris, 334 Mo. 713, 67 S. W. (2d) 981; State ex rel. v. Barrett (Mo. App.), 118 S. W. (2d) 33; State ex rel. v. Southern, 229 Mo. App. 749, 83 S. W. (2d) 162.]

The result in the case must necessarily depend upon the question of whether the act creating police retirement pension systems in this State is to be construed as having invested the board of trustees with sole and exclusive power to determine the rights of a member of the

system who makes application to the board to be retired with a particular benefit or allowance.

Reported cases from other jurisdictions disclose that acts of the general character of our own are frequently so drawn as to specifically provide that the decision of the particular pension board shall be final and conclusive, and where this is so, the jurisdiction of the courts with respect to matters committed to the authority of the board is obviously limited to a superintending control to be exercised within the limits permitted by recourse to extraordinary legal remedies. However in our own act there is no provision making the board's decision final and conclusive, unless it is to be implied from the language of section 8910 which provides that "the general administration and responsibility for the proper operation of the retirement system and for making effective the provisions of this article are hereby vested in a board of trustees," and that "subject to the limitations of this article, the board of trustees shall, from time to time, establish rules and regulations for the administration of funds created by this article and for the transaction of its business."

We cannot believe that this general language with respect to the administration of the act can fairly be read as investing the board of trustees with the power to bind any one, and least of all the courts, by the findings of fact it makes in connection with the disposition of a member's application for retirement with a particular benefit or allowance.

To be sure the board must make a finding of facts whenever such an application is filed with it in order to satisfy itself as to what its own official conduct should be. In other words, the act itself provides what the right of the member and the correlative duty of the board shall be in certain contingencies, and when it is claimed by a member that a certain contingency has arisen, then the board as the body charged with the administration of the act is called upon to make an investigation of the claim for the purpose of ascertaining what the facts may be upon which the law shall operate.

But the board's determination of what the facts may be is not effectual for any purpose other than to enable it to chart its course of conduct as definitely prescribed and limited by the terms and provisions of the act. If the case is clear and there is no dispute about the facts, it may order the member's retirement with the allowance which both he and it recognize as unquestionably due him under the law. But on the other hand, if the case is not clear and there is a dispute about the facts, either the board for its own protection may refuse the application and compel the member to establish his claim in court, or else the member himself, disavowing the correctness of the board's findings upon his application, may sue in court to have the facts judicially determined.

Conceding that the act expressly charges the board with the responsibility for the administration of the same and empowers it to

establish rules and regulations for the orderly transaction of the business intrusted to it, that is still a far cry from saying that it has been given the power to make a binding and conclusive finding upon the facts as they relate to the question of the allowance a member shall receive on his retirement. That allowance comes to the member by right of the act itself and not as a gratuity from the board, and what the allowance shall be depends upon the actual facts of the case and not upon the conclusion that the board may draw. In other words, the act has not vested in the board any discretion with respect to the granting of a retirement benefit, but on the contrary has enjoined upon it the mandatory duty to grant the member whatever allowance he may be entitled to by law. Thus the board's function is to administer the act when the member's right to an allowance is established, which means that in case of disagreement between it and the member as to what his right may be, the issue between them becomes one for judicial determination. [French v. Cook, 173 Cal. 126, 160 Pac. 411.]

As opposed to this conclusion relators have one further suggestion, which is that the silence of the act upon the question of appeal from the board's findings necessarily warrants the implication that it was intended that such findings should be final and conclusive. It is true that in a similar case the Supreme Court of Georgia, by a divided court, did so hold (Smith v. Board of Trustees, etc., 173 Ga. 437, 160 S. E. 395), though it would appear that in reaching its result the court in effect presupposed the very thing it set about to prove, that is, the power of the board to render a final decision from which an appeal would lie if the statute had otherwise provided for it. For our part we think that the silence of the act upon the question of appeal, instead of warranting the implication that it was intended that the findings of the board should be final and conclusive, would rather indicate that it was never intended that the board should have the power of finality of decision. Before there can be finality to a decision, authority must exist for its rendition; and where no such authority has been conferred, there can be no final decision to constitute the basis of appeal.

This brings us then to a consideration of the final aspect of the case, which is that of whether Casey, the member suing for what he claims to be the full retirement benefit due him under the act, has chosen the proper remedy for the adjudication of his claim in the circuit court. Of this we think there can be no doubt, if we are correct in our assumption that the board of trustees has been invested with no authority to render a binding and conclusive decision on the facts.

The question at issue in the proceeding pending before respondent is whether Casey "has become totally and permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place through no negligence on his part." If so, as he claims, he is entitled

to be retired with the accidental disability retirement allowance, but if not, as the board has found, he should be retired with only the ordinary disability retirement allowance.

Obviously, with the facts in dispute, or at least the proper inferences to be drawn from the facts, the matter at issue could not be determined by recourse to *mandamus* or *certiorari,* which would be limited in their scope to a review of pure legal questions arising in connection with the exercise of the board's jurisdiction. The disputed questions of fact could only be determined by invoking the circuit court's original jurisdiction in civil cases, and with Casey's proceeding directed to that end, the demurrer to the petition was properly overruled.

It follows for the reasons stated that the preliminary writ of prohibition heretofore ordered to issue should be quashed, and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The preliminary writ of prohibition heretofore ordered to issue is, accordingly, quashed. *Hostetter, P. J.,* and *Becker* and *McCullen, JJ.,* concur.